Opinion issued June 30, 2005











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00836-CR




MARVIN WAYNE WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 954592
 



MEMORANDUM OPINION
          Appellant, Marvin Wayne Williams, pleaded not guilty to the felony offense
of aggravated robbery. The jury found him guilty and assessed punishment at 31
years in prison. Appellant presents two points of error, claiming that the evidence
was factually insufficient to support his conviction and that his counsel provided
ineffective assistance. We affirm.
BACKGROUND
          Gary Thomas, an employee of Humble Wholesale Ice, an ice house, testified
that he saw appellant sitting in a truck with a trailer attached in front of the ice house
at approximately 9:30 a.m. on May 23, 2003. Thomas testified that appellant told him
he was looking for work. Thomas said that he saw the same truck and trailer backed
into the entrance of Star Steel and Trading at around 9:45 a.m. Thomas identified
appellant at trial and testified that he had previously identified him from a
photospread. Thomas’s employer, Leon Boeker, testified that he saw Thomas
speaking to the driver of the truck, but could not identify appellant as the driver.
          The complainant, Charles Elliott, was the owner of Star Steel and Trading, a
business located in Humble, Texas. Elliott testified that he arrived at his business at
approximately 10:00 a.m. that morning and saw a truck with a trailer attached on his
property. Elliott identified appellant as the man he saw next to the truck and testified
that he had previously identified appellant from a photo spread. When Elliot
approached the truck and asked appellant what he was doing, appellant jumped into
the truck and drove away and would have hit Elliot if Elliot had not jumped out of the
way. Elliot testified that he was in fear of imminent bodily injury or death. Elliott
got back into his car and chased appellant for some time. When appellant pulled his
truck into a subdivision that Elliott knew had no other exit, Elliot waited in a parking
lot near the subdivision exit. When the truck eventually reappeared, Elliott noted that
it was no longer towing the trailer and that he was able to give the license number to
the 9-1-1 operator. Elliott resumed the chase and was joined in it by his daughter,
Theresa Armendariz, who happened to drive by. According to Elliot’s testimony,
when the truck “spun out and died” at the intersection of Frost Street and the feeder
road to Highway 59 in Humble, appellant got out of the truck, reached back into the
cab of the truck, pulled a handgun from it, and ran down Frost Street. Elliot testified
that police arrived immediately after appellant disappeared from view after “cut[ting]
through a house area.” Elliott, his daughter, and police officers later found the trailer
abandoned in the subdivision into which he had seen appellant drive the truck, and
Elliot testified that they found valuable machines from his business inside the trailer.
          Armendariz, complainant’s daughter, also identified appellant at trial and
testified that she had previously identified him from a photo spread. She testified that
she witnessed the end of the chase, saw appellant’s truck spin out, and saw appellant
flee on foot after pulling a handgun from his truck. 
          Officer Martinez of the Houston Police Department testified that he received
a dispatch at 12:05 p.m. and arrived at the intersection of Frost and Highway 59 at
12:07 p.m. Martinez testified that he observed appellant’s abandoned truck and
spoke with Elliot and Armendariz. 
          Appellant testified that he was shopping on May 23, 2003 at the Home Depot
in Humble from around 8:00 or 8:30 a.m. until 10:00 or 10:30 a.m. Appellant said
that when he left the store he saw that his truck had been stolen and that he called 9-1-1 and was transferred to the Humble police, but was unable to provide his truck’s
license number because he had just purchased it and had three other vehicles. 
Appellant said that a man he had been talking to in the store gave him a ride to the
shop where he worked, and that he located the registration for his truck there. 
Appellant testified that he drove another vehicle to the Humble police station to file
a report on his stolen truck and arrived there at around noon.
          Humble police officer Benjamin Kay testified that appellant met with him at
12:20 p.m. that day to report his truck stolen, and that the report indicated that
appellant had first spoken with the dispatcher in the station at 12:12 p.m. Kay
testified that the distance from the intersection where appellant’s truck was
abandoned to the Humble police station was approximately three miles.
          Appellant testified that he had the keys to his truck in his pocket when he was
shopping at the Home Depot. However, appellant admitted on cross-examination that
the Houston police found the ignition key inside the truck and that his truck was not
damaged by forcible entry or by being started without a key. Appellant also admitted
that he had previously stated he was at the Home Depot for only 30 to 45 minutes. 
DISCUSSION
Factual Insufficiency
          In his first point of error, appellant asserts that the evidence was factually
insufficient to support his conviction. Specifically, appellant contends that his
testimony, partially corroborated by the testimony of Humble Police Office Kay,
“establishes appellant’s whereabouts a significant distance from the crime scene
under a timetable making it impossible for appellant to have committed the offense.” 
          In a factual sufficiency review, we view all the evidence in a neutral light, and
we will set the verdict aside only if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust, or the contrary evidence is so strong that the standard
of proof beyond a reasonable doubt could not have been met. Escamilla v. State, 143
S.W.3d 814, 817 (Tex. Crim. App. 2004), cert. denied, __ U.S. __, 125 S. Ct. 1697
(2005); see also Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). The
appellate court should not substitute its own judgment for that of the fact finder. 
Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). 
           The jury is the exclusive judge of the facts, the credibility of the witnesses, and
the weight to be given to the witnesses’ testimony. Jaggers v. State, 125 S.W.3d 661,
671 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d). The jury may believe all,
some, or none of any witness’s testimony. See Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986) (stating that the jury “could choose to believe or not believe
the witnesses, or any portion of their testimony”). A jury decision is not manifestly
unjust merely because the jury resolved conflicting views of evidence in favor of the
State. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997). 
          Appellant argues that the Humble police station is three miles from the place
where his truck was abandoned and that there was evidence that he would have had
only five minutes to travel that distance “on foot.” The accuracy and weight to be
given to the timetable evidence, the eyewitness testimony and identifications of
Elliott, Armendariz, and Thomas, and the contradictions between appellant’s
testimony and his previous statements that he had been shopping for 30 to 45 minutes
and did not leave the ignition key in his truck, are decisions for the jury. See Jaggers,
125 S.W.3d at 672. The fact that the jury resolved the potentially conflicting views
of the evidence in favor of the State does not render the jury’s decision manifestly
unjust. See Cain, 958 S.W.2d at 410.
          After reviewing all of the evidence in a neutral light, we do not find the
eyewitness testimony of Elliott, Armendariz, and Thomas so weak that the verdict is
clearly wrong and manifestly unjust; nor do we find the contrary evidence so strong
that the standard of proof beyond a reasonable doubt could not have been met. We
overrule appellant’s first issue.
Ineffective Assistance of Counsel
          Appellant, in his second point of error, asserts that he received ineffective
assistance of counsel. Specifically, appellant contends that his counsel’s assistance
was rendered ineffective by the following statement counsel made in closing
arguments: “Now, there are two logical answers. And they are real easy answers. 
One is that the times are messed up. Somebody somewhere made a mistake on the
times. That is one logical answer.” Appellant asserts that there was no evidence that
anyone made an error in recording the time, implying that his counsel created an issue
regarding the accuracy of the timetable by making a strategically unwise statement. 
          The record also reflects that, immediately after making the statement appellant
complains of, appellant’s counsel told the jury: “The other logical answer is that the
witnesses saw somebody else other than [appellant] committing that crime. That’s
the other logical answer. Okay? That’s up for you to decide. I can’t really decide for
you. You have to ask yourself, could it raise reasonable doubt? Does it raise it with
you?” The record also reveals that in its closing argument, the State argued that the
timetable evidence did not make it impossible for appellant to get to the Humble
police station, and that appellant’s asserted timetable could have been inaccurate
because of a discrepancy in the timing of events reported by any one of the witnesses.
          The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052,
2064 (1984). Appellant must show that (1) counsel’s performance was so deficient
that he was not functioning as acceptable counsel under the sixth amendment, and (2)
but for the counsel’s error, the result of the proceedings would have been different. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. “Under Strickland, the defendant
must prove, by a preponderance of the evidence, that there is, in fact, no plausible
professional reason for a specific act or omission.” Bone v. State, 77 S.W.3d 828, 836
(Tex. Crim. App. 2002). Our review of appellant’s trial counsel’s performance must
be highly deferential. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. We determine
the reasonableness of counsel’s challenged conduct in context and view it as of the
time of counsel’s conduct. Id. We are to assume a strategic motive if any can be
imagined and find counsel’s performance deficient only if the conduct was so
outrageous that no competent attorney would have engaged in it. Bone, 77 S.W.3d
at 833 n.13. The policy behind this assumption is that “[i]ntensive scrutiny of counsel
and rigid requirements for acceptable assistance could dampen the ardor and impair
the independence of defense counsel, discourage the acceptance of assigned cases,
and undermine the trust between attorney and client.” Strickland, 466 U.S. at 690,
104 S. Ct. at 2066. 
           In this case, the record is silent as to why appellant’s trial counsel presented
the argument appellant asserts is proof of ineffective assistance of counsel. However,
appellant’s trial counsel’s performance was clearly not so outrageous that no
competent attorney would engage in it. See Bone, 77 S.W.3d at 833 n.13. Appellant
has not overcome the strong presumption that his counsel’s conduct falls within a
wide range of reasonable professional assistance and might be considered sound trial
strategy. See Bone, 77 S.W.3d at 836. 
          We overrule appellant’s second point of error.
CONCLUSION
 We affirm the judgment of the trial court.
 
                                                   Sam Nuchia
                                                   Justice
 
Panel consists of Justices Nuchia, Keyes, and Bland.

Do not publish. Tex. R. App. P. 47.2(b).